UNITED STATES of America,
Plaintiff–Appellee,

v.

Tom WITHERS and Willie Lee Rembert,
Defendants–Appellants.

Nos. 80–5045, 80–5061.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1980.
Decided Dec. 5, 1980.

4. Maj. at 441.

Shelby C. Kinkead, Jr., Arnold, Bulleit, & Kinkead, Lexington, Ky., for defendants–appellants.

Patrick H. Molloy, U. S. Atty., Joseph L. Famularo, Asst. U. S. Atty., Lexington, Ky., for plaintiff–appellee.

Before EDWARDS, Chief Judge, WEICK, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

These are direct appeals from the third trial of appellants Withers and Rembert on charges of kidnapping and interstate car theft. In the first trial appellants were convicted and given concurrent sentences of fifteen and five years on the respective charges. After a successful appeal by Withers, the convictions of both men were set aside. . The ground for reversing Withers' conviction was prosecutorial abuse in the fact that the Assistant United States Attorney, in a case directly involving the credibility of the single accusing witness (white) as opposed to that of the two accused men (black), argued in effect that the jury should believe white witnesses rather than black ones. *Withers v. United States*, 602 F.2d 124 (6th Cir. 1979).

On remand a second trial resulted in a hung jury. At the third trial, which produced convictions and this appeal, the District Judge refused to allow appellants' attorney to cross–examine the complaining witness concerning his 10–year–old conviction on a misdemeanor count of marijuana possession. This is the central issue of the current appeal.

At this trial, Theodore F. Burdsall, a young white man, was again the sole witness for the government in the kidnapping charge. Burdsall testified that he picked up two young black strangers, Withers and Rembert, whom he had never seen before, on a public street in Cincinnati. He then testified that the two young blacks kidnapped him at knife point, took control of his automobile, and drove him across the state line from Cincinnati, Ohio, into Kentucky. Burdsall testified that when the car was stopped on I–75, he saw a chance to escape and ran to a gas station where he told the station operator and his assistant that he had been "robbed" and "they are after me."

Appellants, on the other hand, testified that Burdsall had picked them up, offered to show them the town, and had suggested smoking marijuana. When they declined, he did smoke marijuana and became obviously under its influence. Withers' testimony was that they both refused Burdsall's suggestion and asked to be returned to Cincinnati. When Burdsall refused, Withers claimed that he threatened to report Burdsall's possession of marijuana to the police, whereupon Burdsall suddenly ran away to the nearby gas station.

The gas station operator and the attendant testified that Burdsall had run into their station, claiming excitedly that he had been "robbed" of his car. The operator reported this incident to the Kentucky State Police. The State Police Officer who arrested the appellants testified that he did so after a high speed chase south on I–75, making the arrest near Lexington, Kentucky.

Withers' testimony was that after Burdsall ran away they became frightened and determined to go back to Cincinnati and report the matter to the police, but made a wrong turn and ended up traveling south on I–75 rather than north toward Cincinnati.

The police testimony indicated that sizable quantities of marijuana were found in the trunk and glove compartment of Burdsall's car.

The District Judge's ruling, which is the subject of this appeal, was made after the following colloquy with appellants' counsel:

MR. KINKEAD: Again, what I would like to ask this witness and what I would like to demonstrate, and I think it's essential to these defendants' case, is that,

one, that he had been involved criminally with the possession charge prior to these incidents, that he knew what could happen if one were arrested or caught in possession of marijuana. Two, I would like to show that immediately upon his interrogation by the FBI he contacted his brother, who happened to be an attorney, to get advice from him, particularly about the existence of marijuana in his car.

Now, I think those two elements tend to establish a motive for him to fabricate a story. If I'm not allowed to ask him about the prior charge, then my whole defense is undercut.

The District Judge, however, rejected this argument:

THE COURT:—in this aspect. Frankly, I have read the *Allende* case and I have consulted *Weinstein* and it seems to me that basically, No. 1, the law is pretty clear that you cannot impeach a witness by proof of extrinsic facts or individual acts of misconduct. There is an authority that, in any event, the Court should make a determination by weighing the potential for embarrassment, harassment and the holding up to disapprobation of the witness as against the probative value of the information solicited. So I am inclined to say that unless these acts that you propose to explore, which I take it, although I haven't been told yet, include some involvement with marijuana, if they do not rise to a criminal conviction, the offense or a misdemeanor offense of possession of marijuana would not, in my mind, ordinarily have any proper place in the determination of the truthfulness or untruthfulness of the witness.

Defense counsel argued:

MR. KINKEAD: Your Honor, I would tend to agree. I don't think the evidence is being offered to impeach the credibility of the witness. The evidence is primarily being offered to demonstrate the witness'

motive in fabricating a story about an abduction.

The District Judge ruled as follows:

It's my opinion and my judgment that as far as past possession of marijuana is concerned you can ask him if he is familiar with marijuana and/or knows what it is or has ever used it. You can ask him about what he knows, if anything, about this marijuana in this car on this occasion, but I am not, until I am instructed otherwise, going to allow you to ask him about traits of character going to some claim that somebody who has possessed marijuana in the past is likely to be the possessor of marijuana on the present occasion. So, now, if you will limit your cross–examination within those areas, I intend to let you inject before the jury the question of the marijuana as far as impeachment of this witness is concerned.

It is clear that the District Judge was not presented with any reference to *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the case which we believe to be controlling on this issue. Nor did he have presented a specific claim of constitutional right to the admission of the evidence under the confrontation clause contained in the Sixth Amendment to the United States Constitution.

Defense counsel's presentation was based on the Federal Rules of Evidence [1] rather than constitutional right. It did, however, assert the right to cross–examine on the prior marijuana misdemeanor offense as a basis for arguing to the jury that the accusing witness had a strong motivation for falsifying the kidnapping charge.

The Supreme Court dealt in the *Davis* case with this identical confrontation problem in an opinion by Chief Justice Burger. The Court held that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross–examination, citing *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

---

[1]. Defense counsel cited Federal Rules of Evidence 608 and 609(a) and (b). We agree with the District Judge that these two rules are not a proper basis for admission of the evidence. Rule 404(b), which deals with motive, was not cited. *See Government of the Virgin Islands v. Carino*, 631 F.2d 226 (3d Cir. 1980); *United States v. McClure*, 546 F.2d 670 (5th Cir. 1977).

Davis had been charged with grand larceny of a safe which had been found (without its prior contents) on the property of one Richard Green's stepfather. Green, when questioned about the safe, said that he had seen two black men in the vicinity of the safe and identified Davis as one of them. Green, a juvenile, had, himself, previously been placed on probation for burglary, and hence had a motive for wanting to point an accusing finger elsewhere. The Alaska state court, where Davis was tried, refused to allow Green to be questioned about his juvenile court burglary adjudication and probation disposition because of a state statute protecting juvenile records from public exposure.

The Supreme Court, in reversing for new trial,[2] said:

> In opposing the protective order, petitioner's counsel made it clear that he would not introduce Green's juvenile adjudication as a general impeachment of Green's character as a truthful person but, rather, to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this petitioner would seek to show—or at least argue—that Green acted out of fear or concern of possible jeopardy to his probation. Not only might Green have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the Polar Bar, but Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation. Green's record would be revealed only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question.

*Davis v. Alaska, supra,* 415 U.S. at 311, 94 S.Ct. at 1107.

\* \* \* \* \* \*

We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial.

*Id.* at 318, 94 S.Ct. at 1111.

\* \* \* \* \* \*

The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

*Id.* at 316–17, 94 S.Ct. at 1110–1111 (footnote omitted).

We believe that the parallels here are very strong. Burdsall's motivation for denying another offense of possession of marijuana was obvious and substantial. While the state police testimony tended to support Burdsall's testimony concerning theft of his car, Burdsall's kidnapping charge and testimony was the sole basis for appellants' conviction for kidnapping. The somewhat unusual fact that this "kidnapping" commenced with the victim voluntarily stopping to pick up the "kidnappers" adds some weight to appellants' claim that any possible motive for fabrication on Burdsall's part should be permitted to be explored on cross-examination.

**2.** Six Justices concurred with the Chief Justice, while two dissented generally on the grounds that the issue should not be reached on habeas corpus.

Burdsall's testimony may, of course, be completely truthful. All we hold is that the marijuana conviction, misdemeanor though it was, was a proper subject for cross–examination so that this jury had all the facts before it as did the second trial jury which failed to convict.

The judgment of conviction is vacated and the case is remanded for new trial consistent with this opinion.